THE STATE OF OHIO, APPELLEE, *v.* HOOKS, APPELLANT.

[Cite as State *v.* Hooks (1988), 39 Ohio St. 3d 67.]

(No. 86-2056—Submitted May 23, 1988—Decided October 5, 1988.)

*Ronald C. Carey,* prosecuting attorney, and *William F. McKee,* for appellee.

*J. Robert Radabaugh* and *Lynn M. Kelley,* for appellant.

*Per Curiam.*

I

In his first proposition of law, appellant contends that the determination of the jury that the mitigating factors outweighed the aggravating circumstances in the death of Donald Danes is logically incongruent with its further determination that the aggravating circumstances outweighed the mitigating factors in the deaths of Karen and Rodney Danes. R.C. 2929.04 sets forth the aggravating circumstances to be considered in determining whether the death penalty should be imposed. It provides in relevant part:

"(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

"* * *

"(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

"* * *

"(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

"* * *

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

"(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent

his testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for his testimony in any criminal proceeding. * * *"

Applying the foregoing subdivision to the facts of this case, we cannot agree with appellant's assertion that the aggravating circumstances and mitigating factors of each murder are indistinguishable. The state correctly observes that there exist important distinctions between the murders. While the murder of Donald Danes was committed in association with his robbery, the later murders of his wife and son represent a cold, calculated attempt to avoid apprehension. Moreover, the degrees of initiative displayed by appellant with respect to the particular incidents vary considerably. While, for the most part, Terry Coffman orchestrated the events culminating in the death of Donald Danes, the deaths of Karen and Rodney Danes were largely under the direction of appellant. It was appellant who announced the robbery. It was appellant who instructed Coffman to "take the boy." Moreover, it was appellant who recognized the necessity to separate the victims to prevent their escape.

It is therefore evident that significant differences exist as to the presence of aggravating circumstances with respect to each murder. The jury could have reasonably concluded with respect to the murders of Karen and Rodney, that (1) appellant was attempting to escape detection (R.C. 2929.04[A][3]); (2) the murders were part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons (R.C. 2929.04 [A][5]); (3) the murders were committed during the commission of a robbery and appellant was the principal offender (R.C. 2929.04[A][7]); or (4) the later victims were witnesses to the prior murder of Donald Danes (R.C. 2929.04[A][8]).

In contrast, the mitigating factors remained constant as to each murder.

R.C. 2929.04(B) sets forth the following mitigating factors to be considered in determining whether the death penalty should be imposed:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

One mitigating factor common to each crime is the low IQ of appellant. At trial a clinical psychologist who examined appellant testified that he possesses an IQ of seventy-four — plac-

ing him in the bottom three to five percent of the population in terms of intelligence. This low intelligence, it was stated, makes persons with such disabilities susceptible to suggestion. They tend to be followers rather than leaders. Likewise, such limited mental capacity tends to lead to impulsiveness and an inability to appreciate the consequences of one's actions. This testimony is therefore relevant to the factors described in R.C. 2929.04 (B)(2) and (3). Obviously, the disability makes it more likely that the offender will be influenced by even a mild form of duress. Moreover, the disability clearly can play a role in the offender's ability to recognize the criminality of his conduct.

Despite these mitigating factors, however, the traits of susceptibility to duress and impulsiveness associated with the disability were belied by the actions of appellant relative to Karen and Rodney Danes. It was appellant who announced to Karen that he intended to commit robbery. It was appellant who concluded that it would be better to separate the victims.

We therefore hold that, in the case of the murders of Karen and Rodney Danes, the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

## II

Appellant further contends that he did not intelligently and voluntarily waive his rights to remain silent and to seek the assistance of counsel. While he correctly states that it is the obligation of the prosecution to prove the voluntariness of the waiver, such burden has been satisfied in this case.

During the suppression hearing, there was ample evidence that appellant was read his rights (1) prior to his transportation to the county jail; (2) prior to his questioning upon arrival at the county jail; and (3) prior to his videotaped statement at the jail later that evening. Moreover, appellant executed a waiver of rights form, signed the form at the bottom of the page, and placed his initials in the margin corresponding to each right listed and recited to him. The form was read to him and he demonstrated an ability to read it himself. The testimony and exhibits clearly indicate that the waiver of his rights was voluntary.

## III

Appellant contends that the statutory scheme provided in R.C. 2929.04 constitutes cruel and unusual punishment and denies him due process and equal protection under the law. However, these issues have already been addressed and resolved in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264; and *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795. Based on the foregoing cases, appellant's argument must be rejected.

Our final inquiry is whether the death sentence in the case *sub judice* is proportional to that imposed by this court in similar cases. A review of these decisions discloses that the death sentence has been affirmed in cases involving the commission of murder while the offender was committing, attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery, *State* v. *Jenkins, supra*; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906; *State* v. *Brown* (1988), 38 Ohio St. 3d 305, 528 N.E. 2d 523; or aggravated burglary, *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 528 N.E. 2d 542. Moreover, the death sentence has been upheld where the offense was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender. *State* v. *Jenkins,*

*supra; State* v. *Spisak* (1988), 36 Ohio St. 3d 80, 521 N.E. 2d 1; *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 525 N.E. 2d 792; *State* v. *Brown, supra*; and *State* v. *DePew, supra.*

We therefore conclude that the death sentence is neither excessive nor disproportional in the case *sub judice.*

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, BOWMAN and H. BROWN, JJ., concur.

DONNA BOWMAN, J., of the Tenth Appellate District, sitting for WRIGHT, J.