THE STATE OF OHIO, APPELLEE, *v.* HICKS, APPELLANT.

[Cite as State *v.* Hicks (1989), 43 Ohio St. 3d 72.]

(No. 88-1079—Submitted March 14, 1989—Decided May 17, 1989.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Christian J. Schaefer,* for appellee.

*James M. Rueger* and *Dominic F. Perrino,* for appellant.

H. Brown, J. In his first proposition, appellant argues that he was entitled to an instruction on involuntary manslaughter as a lesser included offense of the aggravated murder of Armstrong.[1] He contends that the jury could have found that he was so intoxicated on cocaine that he was unable to form the requisite intent to kill.

Involuntary manslaughter is a lesser included offense of aggravated murder. *State* v. *Clark* (1988), 38 Ohio

---

[1] Although appellant did not request the instruction as to Brandy's murder, he argues that the issue is still relevant to his death sentence, for if the jury had found him guilty only of involuntary manslaughter, that finding could have meant acquittal on the course of conduct specification to Brandy's murder. Cf. *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 246, 530 N.E. 2d 382, 396.

St. 3d 252, 255, 527 N.E. 2d 844, 849. "The primary difference between involuntary manslaughter and aggravated murder is the offender's intent." *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 218, 15 OBR 311, 357, 473 N.E. 2d 264, 310.

Appellant claims that the record contains abundant evidence that he was "high" on cocaine when he killed Armstrong. For this discussion, we assume that the jury could have reasonably found a degree of intoxication. But intoxication alone is not enough. The issue is whether there was a purpose to kill. Intoxication may reduce one's inhibitions.[2] It may blunt one's appreciation of the long-term consequences of one's acts. It may impair one's judgment, as appellant's expert witness testified. But *purpose* is the culpable mental state at issue here—and intoxication, even severe intoxication, can co-exist with purpose. The issue of intoxication is not raised as a defense to the element of purpose in a criminal prosecution merely because the evidence suggests reduced inhibitions, impaired judgment or blurred appreciation by the defendant of the consequences of his conduct. And if the evidence of purpose is such that no reasonable trier of fact can find for a defendant on that element, the jury should not be instructed on involuntary manslaughter.

The evidence in this case shows that appellant acted with purpose. Appellant told Hoffmann that he went to Armstrong's apartment to rob her, knowing that, if he robbed her, he would have to kill her. Acting on this knowledge, he brought a length of rope into the apartment. Before killing Armstrong, appellant smoked a cigarette while "building up the courage to do it in order to get the money."

Appellant strangled his mother-in-law. The Hamilton County deputy coroner who performed the autopsy on Armstrong testified that it takes "about 60 pounds of pressure to occlude the blood flow from the brain." That pressure must be applied for several minutes to cause death. Appellant waited until Armstrong's back was turned, then tried to choke Armstrong three different ways—first with his hands, then with a pillow, then with the rope. Uncertain that Armstrong had stopped breathing, appellant used the rope as a failsafe to ensure her death.

Dr. Nancy Schmidtgoessling, a psychologist, testified for the defense. However, her testimony confirms that an intoxicated person may act purposefully. Despite her opinion that appellant was intoxicated, she considered his actions "goal directed" and testified that "he was able to form intentions."

The uncontradicted evidence showed that appellant thought about the crime in advance, steeled himself to begin, and made tenacious efforts to complete it. On this record, the jury could not have reasonably doubted that appellant—intoxicated or not—purposefully killed Armstrong. An instruction on involuntary manslaughter could only have tempted the jury to return a compromise verdict that " 'could not possibly be sustained by the adduced facts.' " *Jenkins, supra,*

---

[2] Indeed, intoxication is often voluntarily induced precisely because it lessens inhibitions "for the sole purpose of nerving a wicked heart to the firmness requisite for the commission of a crime soberly premeditated * * *." *Nichols* v. *State* (1858), 8 Ohio St. 435, 439.

at 218, 15 OBR at 357, 473 N.E. 2d at 310. We therefore overrule appellant's first proposition of law.

In his second proposition, appellant argues that he was entitled to an instruction on the defense of voluntary intoxication as to both murders.

Voluntary intoxication is a defense to crime where specific intent is a necessary element of the crime and "the intoxication was such as to *preclude* the formation of such intent * * *." (Emphasis added.) *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 55, 22 O.O. 3d 259, 260, 428 N.E. 2d 410, 412. For the defendant to successfully raise this defense, "evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source * * *." *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 111-112, 1 O.O. 3d 61, 66, 351 N.E. 2d 88, 94. Evidence is "sufficient to raise the issue" where, if believed, it would support acquittal. *Robinson, supra,* at 112-113, 1 O.O. 3d at 66, 351 N.E. 2d at 94, quoting *State* v. *Millett* (Me. 1971), 273 A. 2d 504, 508. Because of this court's "deep seated distrust of the reliability of such evidence," the decision to instruct is left to the trial court's discretion. *Fox, supra,* at 56, 22 O.O. 3d at 261, 428 N.E. 2d at 412.

As we said in discussing the first proposition of law, the jury might reasonably have concluded that appellant was intoxicated, but could not have reasonably doubted that he purposefully murdered Armstrong.

Nor could it reasonably have doubted that appellant purposefully murdered Brandy. Appellant admitted to Hoffmann that he decided to go back and "take care of" Brandy because he feared she would identify him. As was the case with Armstrong, appellant tried three different ways to kill Brandy: first he used a pillow, then his hand, and finally a piece of duct tape that he had brought to the apartment from his car.

Since intoxication is no defense unless it negates an element of the offense, the evidence of intoxication here could not have supported a verdict of acquittal. Therefore, the trial court did not abuse its discretion in denying an instruction on voluntary intoxication. Appellant's second proposition of law is overruled.

In his third proposition, appellant asserts six instances of prosecutorial misconduct in the state's closing argument during the guilt phase.

The prosecutor told the jury: "We are trying to take this man's life." This was error: questions of punishment have no place in the trial of guilt or innocence. See *State* v. *Brown* (1988), 38 Ohio St. 3d 305, 316, 528 N.E. 2d 523, 537. However, like the remarks in *Brown,* the remarks here "did not urge the jury to disregard the evidence and to convict the appellant solely to impose the death sentence." *Id.* at 316, 528 N.E. 2d at 538. Indeed, the import of the prosecutor's remarks was that the jury should *not* disregard the evidence and acquit appellant solely to avoid facing a decision on the death penalty. In fact, the prosecutor further stated: "And as it was pointed out, you could avoid that very easily by refusing or failing to sign or finding him guilty of any specification." We find this error harmless.

The prosecutor also said that appellant had "forfeited his right to life * * *." The defense did not object. The prosecutor made two references to deterrence, to neither of which the defense objected. We do not construe these remarks as invitations to decide the case on some basis other than the evidence. Thus, they were not plain error. See *State* v. *Long* (1978), 53 Ohio St. 2d 91, 97, 7 O.O. 3d 178, 181, 372 N.E. 2d 804, 808.

The prosecutor told the jury: "[I]t is time you sent a message to the community." Although the court sustained the objection, it did not instruct the jury to disregard the comment.

A prosecutor may not call for the jury to convict in response to public demand. *State* v. *Davis* (1978), 60 Ohio App. 2d 355, 361-362, 14 O.O. 3d 315, 319, 397 N.E. 2d 1215, 1220. However, the prosecutor's argument must be reviewed as a whole. *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 366, 10 O.O. 3d 485, 492, 384 N.E. 2d 255, 263. Thus, in *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 17 O.O. 3d 92, 407 N.E. 2d 1268, this court upheld a bribery conviction even though the prosecutor had told the jury that, by convicting, it would " 'put all corrupt police officials, public officials on notice that this community will not stand for this kind of activity.' " *Id.* at 157, 17 O.O. 3d at 96, 407 N.E. 2d at 1273. Reviewing the argument as a whole, we held "that the quoted passage was premised upon an establishment of the guilt of appellant." *Id.* at 158, 17 O.O. 3d at 97, 407 N.E. 2d at 1273-1274.

In this case, the prosecutor's request to "send a message" was premised on a finding of guilt. The prosecutor stressed the strength of the evidence that appellant committed the murders and the robbery, and, particularly, the lack of dispute over the facts. The "message" urged by the prosecutor was "[t]hat this [cocaine] is no excuse." Thus, the argument was that the jury should not acquit a guilty defendant because his crimes were preceded by cocaine use.

The prosecutor also told the jurors, without objection: "The people in this community have the right to expect that you will do your duty." This statement was proper. It was the jury's duty to convict if the evidence proves guilt beyond a reasonable doubt.

In his fourth proposition, appellant attacks the prosecutor's argument in the penalty phase. Defense counsel told the jury that appellant would be at least eighty before becoming eligible for parole: "[H]e is looking ten years on robbery and twenty on one count [aggravated murder conviction] and twenty on another." This argument was inaccurate: it incorrectly assumed that the trial court could not have imposed concurrent sentences. See R.C. 2929.41(A) and (B). Where "defense counsel improperly characterizes the role of the jurors during the mitigation phase, then the prosecution may make a brief, corrective statement." *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52, paragraph two of the syllabus. However, the "corrective statement" must itself be correct. "[I]mproper prosecutorial argument will not always be excused under the doctrine of invited response." *Id.* at 435-436, 28 OBR at 487, 504 N.E. 2d at 59 (concurring opinion).

The prosecutor, apparently in response to defense counsel's misstatement, fell into error. The prosecutor said: "But if you get two twenty full years that doesn't mean together, that means you serve twenty full years of the law." By making this statement, the prosecutor implied, incorrectly, that the trial court could *not* have imposed consecutive sentences. See R.C. 2929.41(B)(1). The prosecutor added: "[I]f he is not executed he will be out long before he is 80, long before he is 50." This statement went beyond speculation on the possibility of parole. It is a flat assertion that appellant would be paroled when he first became eligible. Cf. *State* v. *DePew* (1988), 38 Ohio St. 2d 275, 288, 528 N.E. 2d 542, 556. Although objections were sustained here, the jury was not cautioned to disregard the prosecutor's comments. Cf. *State* v. *Wilson* (1972), 30

Ohio St. 2d 199, 204, 59 O.O. 2d 220, 222-223, 283 N.E. 2d 632, 636.

Although the invited-response doctrine does not excuse a prosecutor's misleading statement of law, the provocation of an equally misleading statement by defense counsel diminishes the net prejudicial effect of the prosecutor's error. More significant here, only meager evidence was presented in mitigation. The most important mitigating factors were appellant's voluntary cooperation with the authorities and the possibility that his drug use contributed to the offense. These factors are clearly outweighed by the aggravating circumstances beyond a reasonable doubt. It is clear

that the prosecutor's misconduct did not affect the jury's recommendation.

Appellant's third and fourth propositions of law are overruled.

In his fifth proposition, appellant contends that the trial court erred by refusing to give ten "penalty-phase" instructions.[3]

It is prejudicial error to refuse a requested charge that is pertinent to the case, states the law correctly, and is not covered by the general charge. However, the charge need not be given in the exact language requested. *State v. Scott* (1986), 26 Ohio St. 3d 92, 101, 26 OBR 79, 87, 497 N.E. 2d 55, 63. Our review of the record persuades us that the first, second, third, fifth, sixth,

---

[3] At oral argument, the state expressed confusion concerning whether a trial court should instruct on mitigating factors not raised by the defendant. The state calls attention to the language of R.C. 2929.04(B) stating that the trial court "*shall* consider, and weigh against the aggravating circumstances * * *" (emphasis added), the mitigating factors. In *State v. DePew* (1988), 38 Ohio St. 3d 275, 289, 528 N.E. 2d 542, 557, we held that "those factors not raised may not be referred to or commented upon by the trial court or the prosecution." However, certain language in *State v. Greer, supra,* has apparently been misconstrued in its application to this issue. We hasten to end this uncertainty by reaffirming *DePew*.

Moreover, we consider *Greer* and *DePew* consistent. In *Greer,* we said that the jury was statutorily required to consider, and that the prosecution could comment upon, information contained in a presentence report even though it was not favorable to the defendant. "On its face, consideration of such information is crucial to the evaluations necessarily a part of the sentencing process. They comprise 'the history, character, and background of the offender' which information may favor or disfavor a particular defendant, but which nevertheless '*shall*' be considered by the

court and the trial jury. R.C. 2929.04(B)." *Greer, supra,* at 253, 530 N.E. 2d at 402.

In saying this, we did not mean that the history, character, and background of the offender shall be considered whether the offender raises that factor or not. Indeed, it was central to our analysis in *Greer* that the defendant had "requested these reports which placed this information before the jury." *Id.* Thus, he had placed his history, character, and background in issue. Cf. *State v. Clark* (1988), 38 Ohio St. 3d 252, 527 N.E. 2d 844. Had he not requested the reports, the court would have been powerless to order their compilation, and the information would not have come before the jury. R.C. 2929.03(D)(1). We simply held that, since the information had been "lawfully inserted into the sentencing considerations," it was "subject to fair comment by both parties." *Greer, supra,* at 253, 530 N.E. 2d at 402. In this context, "lawfully inserted" means inserted at the defendant's instance.

Trial courts need not fear that a "Catch-22" situation will develop where they risk reversal whether they instruct or refuse to instruct on mitigating factors not raised. We have upheld a trial court's refusal to instruct on mitigating factors that the defendant did not present. See *State v. Henderson* (1988), 39 Ohio St. 3d 24, 30, 528 N.E. 2d 1237, 1244.

eighth, ninth and tenth instructions proposed by appellant were essentially covered by the general charge. Two proposed instructions remain to be analyzed.

Appellant requested that the jury be instructed that a mitigating factor should be found to exist if it was proven by a preponderance of the evidence, and that appellant was not required to prove mitigating factors beyond a reasonable doubt. The trial court instructed that appellant had no burden of proof, which was more favorable to appellant than the requested charge.

The remaining requested instruction would have told the jury that it could recommend mercy "whether mitigating circumstances [*sic*] exist or not." This instruction is incorrect. Under R.C. 2929.03(D)(2), if the jury finds beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, it "*shall* recommend to the court that the sentence of death be imposed * * *." (Emphasis added.) See *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 141, 22 OBR 203, 217-218, 489 N.E. 2d 795, 810.

Appellant's fifth proposition of law is overruled.

Appellant contends in his sixth proposition that the jury erred by recommending a sentence of death for the aggravated murder of Brandy (Count Three) without also recommending death for the aggravated murder of Armstrong (Count One). If the specifications attached to Count One did not outweigh the mitigating factors, appellant claims that the specifications attached to Count Three could not, as a matter of law, have outweighed the same set of mitigating factors. Appellant concludes that Brandy's youth must have been the reason for the inconsistency. The youth of the victim is not an ag-

gravating circumstance. Thus, argues appellant, the jury's recommendation was erroneous.

Assuming that the jury acted inconsistently, appellant's conclusion does not follow. Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt. *United States* v. *Powell* (1984), 469 U.S. 57, 68. Accord *State* v. *Adams* (1978), 53 Ohio St. 2d 223, 228, 7 O.O. 3d 393, 396, 374 N.E. 2d 137, 140, vacated on other grounds (1978), 439 U.S. 811. Assuming that the aggravating circumstances attached to each murder deserved precisely the same weight, it is possible that the jury, without considering Brandy's youth, felt the death penalty appropriate for such murders, but, "through mistake, compromise, or lenity," *Powell, supra,* at 65, failed to recommend the appropriate sentence for Armstrong's murder.

Further, the verdicts are not necessarily inconsistent. Escape from accountability is an aggravating circumstance in Brandy's murder. Felony-murder is an aggravating circumstance in the murder of Armstrong. These two aggravating circumstances need not be weighed equally. Nor are the mitigating factors the same as to each of the murders. For instance, the jury may well have considered appellant's motive—to satisfy his craving for cocaine—in mitigation of Armstrong's murder. By contrast, his motive for killing Brandy—to avoid being caught for Armstrong's murder—was entitled to no consideration as mitigation.

We considered a somewhat similar multiple-murder case last term. There, the appellant had been sentenced to life for one murder and death for two others. The court held: "* * * [T]here exist important distinctions between the murders. While the murder of

Donald Danes was committed in association with his robbery, the later murders of his wife and son represent a cold, calculated attempt to avoid apprehension." *State* v. *Hooks* (1988), 39 Ohio St. 3d 67, 69, 529 N.E. 2d 429, 431.

The court of appeals applied just such an analysis here, suggesting that the decisive factor explaining the different verdicts might have been "that Hicks chose to return to the Armstrong apartment and commit a *second* murder in a crude but calculated attempt to conceal or destroy any evidence linking him to the *first* murder. This alone * * * is sufficient to mark the offenses factually for differential treatment * * *."

Appellant argues that the court of appeals "compounded" the jury's alleged error by considering this fact, which he claims is part of the nature and circumstances of the offense. This argument overlooks R.C. 2929.04 (A)(3), which provides that an aggravating circumstance exists if "[t]he offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender." The count of the indictment dealing with the murder of Brandy included such a specification, and appellant was convicted of it. Thus, the court of appeals did not weigh the nature and circumstances of the offense against appellant.

Appellant's sixth proposition of law is overruled.

In his seventh proposition, appellant argues that where a defendant, in a capital case, presents "some evidence" that he is not competent to stand trial, the court should find him incompetent. Appellant cites *Ake* v. *Oklahoma* (1985), 470 U.S. 68, in support of this proposition.

*Ake* does not set a standard regarding the degree of proof necessary to find a criminal defendant incompetent to stand trial. Instead, it holds "that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 74.

Under R.C. 2945.37(A), a defendant is presumed competent unless he proves incompetence by a preponderance of the evidence. In the capital case of *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 19, 23 OBR 13, 16, 490 N.E. 2d 906, 910, we observed: "[s]ince the adequacy of the data relied upon by the expert who examined the * * * [defendant] is a question for the trier of fact, and since there was some reliable, credible evidence supporting the trial court's conclusion * * *, this court will not disturb the finding that * * * [defendant] was competent to stand trial."

Three doctors examined appellant. Two considered him competent to stand trial. Only Dr. James Hawkins considered him not competent to stand trial. Dr. Hawkins "could not totally exclude a feigning presentation." Thus the evidence supported the trial court's determination that appellant had not proven by a preponderance of the evidence that he was incompetent to stand trial. We overrule appellant's seventh proposition of law.

In his eighth proposition, appellant argues that the court committed constitutional error when it instructed the jury that the "final decision" to impose the death sentence did not belong to the jury, but to the court. See *Caldwell* v. *Mississippi* (1985), 472 U.S. 320. The United States Supreme Court has recently held: "To establish a *Caldwell* violation, a defendant necessarily must

show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger* v. *Adams* (1989), 489 U.S. ____, ____, 103 L. Ed. 2d 435, 443, 109 S. Ct. 1211, 1215. Since the challenged instruction accurately stated Ohio law, appellant's argument is devoid of merit, and we overrule it.

In his ninth proposition, appellant maintains that he should have been allowed to begin and end closing arguments in the penalty phase. However, he concedes that this issue has been resolved against him. See *Jenkins, supra,* at 214-215, 15 OBR at 354, 473 N.E. 2d at 307-308.

In his final proposition, appellant attacks the constitutionality of the death penalty and of Ohio's statutory scheme for imposing it.

Appellant argues that the use of one jury to determine both guilt and penalty is unconstitutional, an argument rejected in *Lockhart* v. *McCree* (1986), 476 U.S. 162, and in *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 248, 530 N.E. 2d 382, 397. His other arguments have been considered and rejected several times. See, *e.g., Jenkins, supra,* at 168-169, 15 OBR at 314-315, 473 N.E. 2d at 273; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 124-126, 31 OBR 273, 284-286, 509 N.E. 2d 383, 395-396; *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 38-39, 526 N.E. 2d 274, 285; *State* v. *Bedford* (1988), 39 Ohio St. 3d 122, 131-132, 529 N.E. 2d 913, 922-923; *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 28-30, 528 N.E. 2d 1237, 1242-1243; *State* v. *VanHook* (1988), 39 Ohio St. 3d 256, 264-265, 530 N.E. 2d 883, 890-891. They are summarily overruled. See *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 4, 520 N.E. 2d 568, 571.

Finally, this court must perform the independent review mandated by R.C. 2929.05(A).

The testimony in the penalty phase established that appellant is considered by his co-workers to be a good person and a hard worker. As a child, appellant worked hard to learn to read despite a learning disability. His father had a drinking problem. When sober, his father was unable to communicate with him.

Appellant's mother testified that "if he had been himself," he "would not have hurt Brandy or his mother-in-law because he loved them."

In an unsworn statement, appellant reiterated that he had been "high" when he committed these crimes, but apologized for what he had done.

Appellant's poor relationship with his father and his reputation as a determined, hard worker are entitled to slight weight, if any, in mitigation. Appellant's age (twenty-nine) is entitled to no weight in mitigation. Additionally, we give little or no weight to his alleged love for Brandy and Armstrong, as it proved too weak to stop him from killing them for his own benefit.

The possibility that appellant was under the influence of drugs when he killed his victims should be assigned some weight in mitigation. Appellant turned himself in, waived extradition, and cooperated with police. This factor tends to show remorse and is entitled to greater weight than any of the others.

Nonetheless, we find the combination of mitigating factors presented here to be of almost negligible weight. They are clearly outweighed beyond a reasonable doubt by the aggravating circumstances of which appellant was convicted.

The sentence of death is proportionate to those affirmed for ag-

gravated murder as part of a course of conduct in *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407 (father killed three sons), and *State* v. *Poindexter, supra* (two victims), and for aggravated murder to escape accountability for another offense in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598.

Accordingly, this court affirms the convictions and the sentence of death.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS and RESNICK, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.