Malcolm F. Williams, defendant-appellant, appeals a decision entered upon a jury verdict in the Franklin County Court of Common Pleas, Criminal Division, for aggravated robbery, a violation of R.C. 2911.01; two counts of robbery, a violation of R.C. 2911.02; and receiving stolen property, a violation of R.C. 2913.51. We affirm.
Appellant was accused of robbing a person on February 5, 1998 at a bar in downtown Columbus, Ohio. The victim testified that he left the bar at approximately 11:45 p.m. Shortly after he got in his car, he saw a person by his driver's side door, which he later identified as appellant. The victim stated:
 * * * I looked at him, looked at his face and he asked me for a light. So my window is kind of broke. So I opened up the door. And next thing I heard was, he said, "give me your * * * wallet." So I did. * * *
 * * * And then he said, and your coat, and my jacket. So I still had my seat belt on * * * he didn't want me to undo my seat belt, so I had to take it out and pull it over my shoulder and he helped me. And he kind of pulled it off me and dragged it * * * behind me.
The victim also testified that he saw appellant holding a gun.
 I saw the gun — well, after I opened up my door, that's when I kind of looked, you know, from his head to the ground, that's when I saw the gun. And he was holding it like right above his belt level. * * * But it was like he was tucking it, but it wasn't tucked. Well, I can't recall if the whole thing was tucked. I just saw a little piece of it, probably about maybe two inches of the gun.
The victim stated that: "I think he said, don't let me use this on you or don't let me shoot you."
The victim testified that after appellant had taken his wallet and jacket, appellant asked for his keys. The victim stated that appellant then walked away from the car with his keys and dropped them saying that he could "get them after he left." The victim immediately contacted the police about the incident.
Larry Messmer was working as a bartender at Minsky's on February 5, 1998. Messmer testified that appellant arrived at Minsky's and ordered drinks for himself and other people that were with him. Messmer stated that appellant asked for the drinks to be placed on his tab which appellant secured by a credit card. When the bar was closing after 2 a.m., appellant asked Messmer to charge the amount of the tab to the credit card. Messmer further testified that after running the credit card through a Visa machine, "[i]t came back as hold the card."
Officer Samuel, a member of the Columbus Police Department, testified that he was working at Minsky's on a special duty assignment when he was informed by Minsky's personnel that appellant "did not pay and the credit card they gave to me, picture on the credit card did not match up with [appellant]." Officer Samuel further testified that when he patted down appellant to make sure he did not have any weapons, he found that appellant was carrying a locking-blade knife. He further stated that he:
 * * * called up the credit card company to find out if I could get further information on the card. They informed me that it was, the card was on hold, that we needed to hold the card, could not be used, could not tell me if it was stolen or any other information.
 From there I looked into the phone book and looked up the name that was on the card * * * called the number that went with the name, and I asked him if he was missing any property. He stated that he had been robbed earlier that evening at gunpoint, had his wallet and his jacket stolen.
Officer Samuel testified that the person on the phone described the jacket that appellant was wearing and "he gave a fairly descriptive description of the suspect that's sitting in front of us."
Appellant was arrested and the police asked the victim to identify the man who robbed him from a photographic lineup. The victim viewed six photographs of individuals who resembled the description the victim had previously given to the police of the robber. The victim stated: "Well, he [the police detective] brought out the photographs. He laid them down on a table, and he asked me to look at them * * * look at them closely; and it probably took me like two seconds to point him out the guy who robbed me." The photograph the victim identified was a photograph of appellant.
On February 12, 1998, a grand jury returned an indictment against appellant charging him with one count of aggravated robbery, two counts of robbery, and one count of receiving stolen property. The aggravated robbery count included two gun specifications that stated that appellant "had a firearm on or about his person or under his control while committing the said Aggravated Robbery, and [appellant] displayed and/or brandished and/or indicated that he possessed the firearm."
Appellant was tried before a jury on July 10 and July 13-14, 1998. At his trial, appellant's counsel argued that appellant did not rob the victim. Counsel contended that appellant received the victim's jacket and credit card from a man named Mike Ayers. In support of this argument, appellant's counsel presented the testimony of appellant's girlfriend, Amy Jo Dober.
Dober testified that on February 5, 1998, at approximately 10:45 p.m., appellant and Ralph Morgan left her apartment. She stated: "They was [sic] planning to go to a bar. They wanted to go bar hopping. They was [sic] speaking about going to Minsky's * * * and as far as I know that's all they did." She also testified that at about 12:15 or 12:30 a.m.:
 * * * a guy named Mike Ayers or Mike Wilson comes over with some — some things in his hand and he was looking for [appellant]. And I told him [appellant] was gone with Chip he wanted to go to bars. I said he is probably up at Minsky's. He says, okay, well, if you talk to him, let him know I'm on my way.
Dober further testified that Ayers had the victim's jacket, and that he wanted "to know if [appellant] wanted to buy the jacket * * *." She also claimed that Ayers "would go out and steal things for crack. He had a really bad crack habit."
On July 14, 1998, the jury found appellant guilty on all four counts of the indictment. The verdict on count one of the indictment signed by the jurors stated in part:
 We, the Jury, being duly impaneled and sworn, do find the Defendant, Malcolm F. Williams, GUILTY OF AGGRAVATED ROBBERY with Specification as charged in Count One of the indictment.
 We further find Defendant did/did not (circle one) have a firearm on or about his person or under his control. We further find Defendant did/did not
(circle one) display and/or brandish and/or indicate that he possessed a firearm and/or used a firearm.
At appellant's sentencing hearing on July 20, 1998, appellant's counsel made "a motion for acquittal on the aggravated robbery charge under Rule 29 on the basis that * * * the jury came back with a verdict of guilty on the aggravated robbery but not guilty on the two gun specs, which I believe is an inconsistent verdict." The court overruled the motion. Appellant appeals his convictions and presents the following three assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL ON THE AGGRAVATED ROBBERY CHARGE BASED ON THE JURY'S INCONSISTENT FINDINGS WITHIN COUNT ONE OF THE INDICTMENT.
 II. THE TRIAL COURT ERRED IN THAT ITS DECISION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant argues in his first assignment of error that the trial court erred because it overruled appellant's Crim.R. 29 motion for an acquittal. Appellant claims that his motion should have been granted because the jury's guilty verdict for the first count of the indictment included an inconsistent finding. We disagree.
First, Crim.R. 29 allows a court on motion of a defendant "after the evidence on either side is closed" to order an "entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). In his motion for an acquittal, appellant did not allege that there was insufficient evidence to sustain appellant's conviction. Therefore, the trial court could not grant appellant's Civ.R. 29 motion for an acquittal based upon the argument presented by appellant's trial counsel.
Second, the United States Supreme Court has found that an inconsistent jury verdict does not mandate a reversal of a defendant's criminal conviction. United States v. Powell
(1984), 469 U.S. 57, 105 S.Ct. 471. The Court based its conclusion upon the following reasons: (1) the general reluctance of courts to inquire into the workings of the jury; (2) the equal possibility that the inconsistency was caused either by the jury's leniency towards a criminal defendant or by a mistake by the jury ("it is unclear whose ox has been gored"); (3) the state being precluded from appealing an inconsistent verdict by the Double Jeopardy Clause of the United States Constitution; and (4) the fact that a criminal defendant may be afforded protection against jury irrationality or error by an independent review of the sufficiency of the evidence by trial and appellate courts. Powell,469 U.S. at 65-69, 105 S.Ct. at 476-479.
Ohio courts have adopted the United States Supreme Court's reasoning in Powell finding that an inconsistent jury verdict does not mandate a reversal of a criminal defendant's conviction. State v. Bryant (Aug. 28, 1996), Summit App. No. 17547, unreported. See, also, State v. Lovejoy (1997), 79 Ohio St.3d 440,444; State v. Hicks (1989), 43 Ohio St.3d 72, 78, certiorari denied (1990), 494 U.S. 1038, 110 S.Ct. 1502; Statev. Edmonson (Sept. 25, 1998), Portage App. No. 97-P-0067, unreported, appeal allowed on other grounds (1999), 84 Ohio St.3d 1473; State v. Garner (June 18, 1998), Franklin App. No. 97APA07-878, unreported (1998 Opinions 2210, 2225), dismissed (1998), 83 Ohio St.3d 1460. Further, Ohio courts have extended the reasoning of Powell to include cases in which the inconsistency is contained within a single count of an indictment with a specification. State v. Woodson (1985),24 Ohio App.3d 143. For example, this court in Woodson upheld an inconsistent single-count verdict with a specification that stated:
 We, the jury in this case, having found the defendant Jack A. Woodson guilty of Aggravated Robbery * * * do find that the Aggravated Robbery was not committed while the defendant had a [firearm] deadly weapon * * * on or about his person or under his control while committing said Aggravated Robbery.
Woodson at 143.
Accordingly, we find that the trial court did not err in overruling appellant's motion for an acquittal pursuant to Crim.R. 29. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that appellant's convictions are against the manifest weight of the evidence. Appellant claims that the victim's testimony "regarding whether or not he saw a gun in Appellant's possession is uncertain, unreliable and vague." Appellant further claims that Kacy Canegali's testimony contradicted the victim's testimony and should be relied upon instead of the victim's testimony because her testimony is "reliable and not self serving." Canegali testified that on February 5, 1998, she talked with appellant at Minsky's at approximately 11:45 p.m.
The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v.Clemons (1998), 82 Ohio St.3d 438, 444. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387.
Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180,193.
 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Heer (Sep. 24, 1998), Franklin App. No. 97APA12-1670, unreported (1998 Opinions 4464, 4474). The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See State v. Smith (1997),80 Ohio St.3d 89, 114, certiorari denied (1998), ___ U.S. ___,118 S.Ct. 1811. The victim's testimony concerning the gun was not uncertain, unreliable or vague. The victim testified that he saw appellant holding a gun and "just saw a little piece of it, probably about two inches of the gun." The victim further testified that "the gun was visible. I mean, he didn't point it at me or anything. It was visible * * *." Any vagueness in the victim's testimony concerning the gun can be contributed to the victim's testimony that it was dark and that the robber was "tucking it." Additionally, it was within the jury's province to weigh the victim's testimony against Canegali's testimony, and find that the victim's identification of appellant as the robber was more credible. Accordingly, we overrule appellant's second assignment of error.
Appellant argues in his third assignment of error that he did not receive effective assistance of counsel because his attorney "failed to reveal to him a plea bargain that was offered by the prosecuting attorney for the State of Ohio to a lesser charge." Appellant also claims that if such a plea bargain had been offered to appellant, "he would have accepted that and avoided the risk of trial."
"It is fundamental that appellate review is limited to the record as it existed at the time of judgment." Ohio Patrolmen'sBenevolent Assn. v. Copley Twp. (May 15, 1996), Summit App. No. 17513, unreported, following App. R. 12(A) and McKay v. Cutlip
(1992), 80 Ohio App.3d 487, 490, fn. 3. Appellant's argument that he received ineffective assistance of counsel is based upon facts that are not part of the record. It would be improper for this court to decide issues on appeal based upon factual allegations that appellant presents for the first time in his appellate brief. This type of evidence outside the record is most properly presented in a petition for postconviction relief and not in a direct appeal. State v.Winters (July 20, 1998), Licking App. No. 97CA144, unreported, dismissed (1998) 84 Ohio St.3d 1434. Appellant's third assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and BOWMAN, JJ., concur.