OPINION
Defendant-appellant Janice Wright, appeals from her conviction and sentence for Aggravated Burglary. On appeal, she raises a sufficiency of the evidence and a manifest weight argument. She also contends that the trial court committed prejudicial error by failing to properly instruct the jury.
We conclude that Wright's conviction for Aggravated Burglary is supported by sufficient evidence and is not against the manifest weight of the evidence. We also conclude that the trial court did not err in its instructions to the jury and that no prejudice resulted from the instructions. Accordingly, the judgment of the trial court is Affirmed.
 I
Wright was indicted on June 21, 2000 on one count of Aggravated Burglary, in violation of R.C. 2911.11(A)(1), and one count of Robbery, in violation of R.C.2911.02(A)(2). A jury trial was commenced on October 25, 2000, at which the following evidence was adduced.
John Layne, a 63-year-old man, resides in a house in Dayton. Layne testified that in early 2000, he hired Wright to clean his house in exchange for payment of twenty dollars per cleaning. Wright went to Layne's house several times prior to Memorial Day. According to Layne, she did not clean his house, and he told her not to come back to his home.
Layne testified that on Memorial Day, he began talking to Willie Mae Sheffield, who was grilling food for Layne's neighbors. He testified that Ms. Sheffield gave him a plate of food to eat. He further testified that he saw Wright walking up the street and that he told Ms. Sheffield that Wright was the lady who was supposed to clean his house. He then invited Ms. Sheffield to come over and see his house.
Layne testified that he took the plate into his house, and sat down in his bedroom to eat. While he was eating, Wright entered his bedroom and asked him for twenty dollars. He testified that when he refused to give her the money, she threw him down on his bed, straddled him and began to physically assault him. Layne testified that Wright beat him in the face with her fist, and that she used his stun gun on him as well. He further testified that Ms. Sheffield and a man then walked into the room and that Wright stopped beating him when she noticed them. Layne testified that Wright resumed beating him again when the others left, and that he therefore gave her ten dollars. He testified that she then left the house, but that she took his stun gun with her. He also testified that while the main door to his house had been open, the metal screen door to his house had been shut that day. Finally, Layne testified that his eyes were swollen after the encounter.
Willie Mae Sheffield and her cousin Alton Sheffield both testified at the trial. They both testified that Layne pointed out Wright when she was walking up the street as the lady who had done some cleaning for him. They both also testified that when they went over to visit Layne, the metal screen door was closed, but that they entered anyway. They testified that they found Layne in the bedroom. They stated that they heard Layne telling Wright, who was on top of him, to get off. They further testified that when Wright saw them she got off of Layne. They testified that they then left the residence. Ms. Sheffield further testified she saw Wright leave the house. Finally, Ms. Sheffield testified that she saw Layne about an hour later and noticed that he had a knot on his forehead, a burn on his shoulder and a bruise on his shin.
Dayton Police Officer, Alan Miller, testified that when he investigated the incident he noticed that Layne had swelling on his face. He testified that when he went to Wright's residence, she admitted that she had hit Layne and also told him that Layne had given her three dollars. He testified that he arrested Wright for Robbery and for an outstanding warrant against her.
Wright presented the testimony of her sister, Yvonne Wilson, who testified that Layne and Wright had been dating each other and that Layne had been over to her house numerous times.
Following trial, the jury acquitted Wright of the Robbery charge, but convicted her on the Aggravated Burglary charge. Wright was sentenced accordingly. From the conviction and sentence she appeals.
On the face of her opening brief, Wright has placed the legend: "ORAL ARGUMENT REQUESTED." Our Local Rule 3 requires that a party desiring oral argument of an appeal must file a written motion to that effect within a time specified. The filing of a written motion is calculated to bring the request for oral argument to the attention of the administrative officers of this court within sufficient time to schedule the case for oral argument, because the clerk of this court brings motions to the attention of the administrative officers of this court in order that they may be ruled upon timely. By contrast, the appellate briefs are not normally brought to the attention of the judges assigned to the case until within a week or two of the date that the appeal is submitted for decision on the merits. The judges may not read the briefs carefully until a day or two before that date. In this case, for example, although the briefs were scanned earlier to identify the basic issues involved in the appeal, they were not carefully read, by this author, at least, until the Thursday before the Monday submission date. Even then, it is far from inevitable that a typed notation on the face of the brief requesting oral argument would be noticed, since the court's attention is focused instead upon the facts and legal arguments contained within the text of the briefs.
In short, Wright has failed to file a timely motion for oral argument within the requirements of Loc.R. 3. Therefore, this appeal has been deemed submitted for decision on the briefs, without oral argument.
 II
The First Assignment of Error is as follows:
 APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE IN THE RECORD TO SUSTAIN A GUILTY VERDICT.
Wright contends that the State failed to present sufficient evidence to support her conviction for Aggravated Burglary.
In determining whether the evidence presented at trial is sufficient to support a conviction, a reviewing court must decide whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
The offense of Aggravated Burglary is defined in R.C. 2911.11(A)(1), which states, in pertinent part:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
Thus, the State was required to provide evidence that Wright trespassed by force, while Layne was present in his house, with the purpose to commit a criminal offense. The State was also required to provide evidence of physical harm to Layne.
R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(3) defines "physical harm to persons" as any injury regardless of its gravity or duration. Finally, trespass occurs when a person, without privilege to do so, knowingly enters on the premises of another. State v. O'Neal (2000), 87 Ohio St.3d 402, 408.
Here, the State produced evidence showing that Layne's metal screen door was shut and that he was in his bedroom eating when Wright walked in and attacked him. The reasonable inference is that Wright had to open the door to enter the premises. This court has held that "the effort necessary to open a door, locked or unlocked, is sufficient to satisfy the element of "force" necessary to prove burglary." State v. Ford (May 17, 1996), Montgomery App. No. 15374, unreported, citing, State v. Gregg (Oct. 26, 1992), Champaign App. No. 91-CA-15, unreported, and State v. Lane (1976), 50 Ohio App.2d 41, 45-46. The State also produced evidence that Layne had told Wright not to return to his home, so that Wright had no privilege to be in the home, thereby satisfying the element of trespass .
With regard to the element of purpose to commit a criminal offense during the course of the trespass, the Ohio Supreme Court has held that a defendant may form the requisite purpose at any point during the course of a trespass. State v. Fontes (2000), 87 Ohio St.3d 527, 530. In this case, the State produced evidence that, while in the home, Wright demanded money from Layne and physically assaulted him when he refused to give her any money. There was also evidence that she took Layne's stun gun when she left the house. From this evidence, a reasonable juror could infer that Wright formed the purpose to commit a theft offense during the course of the trespass.
Finally, the evidence presented by the State was more than sufficient to show that Layne suffered physical harm as a result of the encounter. Layne, Willie Mae Sheffield, and Officer Alan Miller all testified to Layne's injuries sustained during the incident.
We conclude, notwithstanding Wright's assertion to the contrary, that this constituted sufficient evidence to show that Wright entered the home with the purpose to commit a theft offense, and that she physically harmed Layne during the commission of the offense.
Accordingly, the First Assignment of Error is overruled.
 III
The Second Assignment of Error is as follows:
 THE COMPROMISED GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In this Assignment of Error, Wright contends that her conviction for Aggravated Burglary is against the manifest weight of the evidence. Her argument appears to be that since she was acquitted of Robbery, the jury could not have found the elements necessary to convict her of Aggravated Burglary. In essence, she argues that the element of "purpose to commit * * * any criminal offense," required by R.C. 2911.11(A)(1), was not proven, and therefore she should not have been convicted of Aggravated Burglary on the basis of the evidence presented at trial.
Although an appellate court may determine that a judgment is supported by sufficient evidence, it nevertheless may conclude that the judgment is against the manifest weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In determining whether a conviction is contrary to the manifest weight of the evidence, an appellate court:
 * * * sits as a "thirteenth juror" and may register its disagreement with the determinations of the fact-finder. The appellate "court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." From the last sentence quoted above it is clear that we must accord substantial deference to the fact-finder, and reverse on a manifest weight review only in extraordinary cases.
State v. Brewer (Mar. 17, 2000), Montgomery App. No. 17766, unreported, citations omitted.
Again, the State presented evidence upon which a jury could reasonably find that Wright, by force, trespassed in Layne's home. There is also ample evidence upon which a jury could reasonably find that Wright caused physical harm to Layne. The more difficult factual issue is whether Wright was in the home with the purpose to commit a criminal offense.
As Wright correctly notes in her Third Assignment of Error below, the only criminal offense on which the jury was instructed was Robbery, and the jury acquitted her of that charge. Hence, she argues that the purpose to commit a criminal offense (in this case Robbery), an element of Aggravated Burglary, was not proven.
Wright's argument centers on the inconsistency of the verdicts. The Ohio Supreme Court has held that an inconsistency in a verdict cannot arise out of inconsistent responses to different counts. State v. Brown (1984), 12 Ohio St.3d 147, syllabus. Where two verdicts are inconsistent, that does not require reversal of the guilty verdict. State v. Hicks (1989), 43 Ohio St.3d 72, at 78; see also, State v. Lovejoy (1997), 79 Ohio St.3d 440. The latter case involved an inconsistency between a conviction on one count and a hung jury on a related, but different, count, but the principle is the same. Since it is impossible to tell whether the jury erred in returning the guilty verdict on the one count, or whether it erred in failing to return a guilty verdict on the second count, the inconsistency in the jury's actions fails to establish that it erred in returning the guilty verdict.
The Second Assignment of Error is overruled.
 IV
The Third Assignment of Error is as follows:
 THE TRIAL COURT COMMITTED PLAIN ERROR AND DENIED APPELLANT HER RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER U.S. CONSTITUTION AMENDMENT XIV AND OHIO CONSTITUTION ARTICLE I, SECTION 16.
Wright contends that the conviction must be reversed because the trial court improperly instructed the jury on the elements of Aggravated Burglary. Specifically, she contends that while the jury was properly instructed that it had to find that she had purpose to commit a criminal offense while in Layne's residence, the only criminal offense on which the jury was instructed was that of Robbery, of which she was acquitted. Therefore, she argues that the jury must have found her guilty of "some other criminal offense — perhaps assault — which was not defined for them." Thus, Wright argues that the jury must have found that she had purpose to commit some criminal offense for which they had no legal definition, and that this resulted in prejudicial error because it invited the jury to speculate as to what sorts of conduct might constitute criminal offenses.
Wright failed to object to any of the jury instructions. Absent plain error, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12, syllabus; Crim.R. 30. Plain error should be invoked only to prevent a clear miscarriage of justice. Id. at 14. Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978), 53 Ohio St.2d 91, 97.
We have examined the jury instructions regarding the charge of Aggravated Burglary, and have found no error therein. At most, Wright has shown that the verdicts on the two counts are inconsistent. This is not reversible error. See Part III, above. Inconsistency in the verdicts on two counts does not establish that the jury failed to follow correct instructions on the count with respect to which the jury has returned a guilty verdict. Otherwise, inconsistent verdicts would always constitute reversible error. We conclude that Wright has failed to demonstrate error or prejudice in relation to the jury instructions. Accordingly, the Third Assignment of Error is overruled.
 V
All of Wright's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
BROGAN and GRADY, JJ., concur.