JOURNAL ENTRY AND OPINION
{¶ 1} Defendant John Smith appeals from his conviction for gross sexual imposition. For the reasons set forth below, we affirm.
 {¶ 2} On April 14, 2005, defendant was indicted for one count of rape, two counts of gross sexual imposition, and one count of kidnapping with a sexual motivation specification. He pled not guilty and the matter proceeded to a jury trial on June 21, 2005.
 {¶ 3} The state presented the testimony of T.B.,[1] Kimberly Starks and Cleveland Police Officer Richard Adams.
 {¶ 4} T. B. testified that she was born in 1985 and worked as a hostess at the Winking Lizard, a sports bar, on Huron Road in Cleveland. On March 8, 2005, defendant entered the bar and began to speak with her. Although she had never met him before, they exchanged phone numbers and he offered to give her a ride home from work. Defendant then left the restaurant but called T.B. later that evening to see if she needed a ride home. T.B. learned that her roommate, her cousin, also needed a ride home so both women accepted the offer.
 {¶ 5} Defendant took the women to their apartment then asked T.B. if she would like to go out. She agreed but explained that she had to be at school early the next day so she could not stay out late. The woman was not old enough to get into a bar so defendant bought them alcohol. Defendant then told the woman that he had to go to his *Page 3 
apartment. He rolled a marijuana cigarette and started to kiss her. He exposed himself to her and asked if she wanted to play with his penis and she said that she did not. Defendant continued to request sexual contact. T.B. repeatedly refused him and he became angry and upset.
 {¶ 6} They went into defendant's bedroom to watch a pornographic movie. According to T.B., defendant kept forcing the issue and she felt like she had no choice. He repeatedly lifted her shirt and kissed her. She told him to stop and began to cry.
 {¶ 7} T.B. further testified that defendant asked her to try on a pair of pants. She went to the bathroom and tried on the pants. When she returned to the bedroom, defendant was in his underwear. He repeatedly asked her for sex and she refused. According to T.B. defendant digitally penetrated her and she asked him to stop. As an excuse, she told him that his nails were too long. He continued to hold her down. He lifted her shirt and kissed her neck and breasts. T.B. testified that she did not agree to any sexual contact. She asked defendant to take her home and he refused. When he eventually let her up, she went to the living room to look for her cell phone and eventually found it under the couch. She intended to call the police but defendant was standing too close. He then went to the bathroom and she unlocked the doors, fled the apartment and called the police. She declined *Page 4 
emergency treatment and was taken home.
 {¶ 8} T.B. further testified that, following the incident, defendant showed up at her job on three separate occasions and just stared at her. T.B. told her manager what had happened and they contacted the police.
 {¶ 9} On cross-examination, T.B. admitted that she sometimes smokes marijuana but she denied that she attempted to smoke marijuana in defendant's car and denied smoking marijuana at her apartment after defendant drove her and her cousin home. She also admitted that she incorrectly believed that defendant lived in Cleveland Heights, but she denied that she was high at the time of the incident. She denied unzipping defendant's pants. She denied calling police simply to obtain a ride home.
 {¶ 10} Kimberly Starks testified that she had been visiting her mother and then met with T.B. to get keys. T.B. explained that defendant was taking them home. Starks told defendant that she was hungry and he bought her a sandwich. After defendant took them home, he asked if they wanted to go out. Starks declined and T.B. and defendant then left. T.B. then returned home at around 3:00 a.m. She was crying and told Starks that the man tried to rape her.
 {¶ 11} Starks next observed defendant at the Winking Lizard. He was sitting near the cash register, had no food or beverage, and was staring at T.B.
 {¶ 12} Officer Adams testified that he responded to T.B.'s call for assistance at 3328 East 149th Street at approximately 2:45 a.m. Officer Adams went to *Page 5 
defendant's apartment and arrested him.
 {¶ 13} On cross-examination, Officer Adams stated that defendant was cooperative. He could not recall if he apologized to defendant or told him that the charges might be dismissed.
 {¶ 14} Defendant presented no testimony. The jury subsequently convicted defendant of one count of gross sexual imposition and acquitted him of the remaining charges. The trial court sentenced him to one year of community control sanctions. Defendant now appeals and asserts that his conviction is against the manifest weight of the evidence.
 {¶ 15} Within his assignment of error, defendant asserts that the conviction cannot stand because the jury acquitted him of the rape conviction, thus accepting his defense that the woman consented to the encounter. He further asserts that the woman's testimony was implausible because the apartment was not in disarray and the woman did not appear disheveled.
 {¶ 16} In opposition, the state argues that separate evidence was offered as to each count and that the conviction of the instant offense, which resulted from defendant kissing the victim's breast and neck while holding her on the bed, is not against the manifest weight of the evidence. The state additionally notes that the acquittals for the other offenses do not negate the conviction pursuant to the Supreme Court's holding in Ohio v. Johnson (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425. *Page 6 
 {¶ 17} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." State v. Thompkins,78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 18} In reviewing a claim that a conviction is against the manifest weight of the evidence, a reviewing court cannot reverse a conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. Further, this court must remain mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862.
 {¶ 19} In Ohio v. Johnson, supra, the Supreme Court rejected the defendant's claim that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of that charge. The Court explained the double jeopardy protections as follows: *Page 7 
 {¶ 20} "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. * * * While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution. * * * Respondent's argument is * * * that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now."
 {¶ 21} Moreover, each count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a guilty verdict. See State v. Hicks (1989), 43 Ohio St.3d 72, 78,538 N.E.2d 1030; State v. Brown (1984), 12 Ohio St.3d 147, 465 N.E.2d 889, paragraph one of the syllabus; State v. Washington (1998),126 Ohio App.3d 264, 276, 710 N.E.2d 307. "The sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." State v. Lovejoy,79 Ohio St.3d 440, 444, 1997-Ohio-371, 683 N.E.2d 1112.
 {¶ 22} In this matter, T.B. testified that although she made some bad choices *Page 8 
on the night of March 9, 2005, she did not consent to sexual contact. The state's evidence further established that defendant held T.B. down on the bed, lifted her shirt and kissed her neck and breasts. We are therefore unable to conclude that the jury lost its way or created a manifest miscarriage of justice in concluding that defendant purposely compelled T.B. to submit to sexual contact by force. The conviction for gross sexual imposition is not against the manifest weight of the evidence. R.C. 2907.05.
 {¶ 23} The assignment of error is without merit.
Affirmed.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] It is the policy of this Court to omit the names of child crime victims and adult victims of sexual violence. *Page 1