[Cite as *State v. Shaffer*, 2018-Ohio-4976.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 18CA5 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| MATTHEW A. SHAFFER, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/04/18** |

_____

APPEARANCES:

Scott P. Wood, Conrad/Wood, Lancaster, Ohio, for Appellant.

Benjamin E. Fickel, Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Matthew A. Shaffer appeals from a judgment filed in the Hocking County Court of Common Pleas convicting him of one count of attempted unlawful sexual conduct with a minor, being ten or more years older than the victim, a fourth-degree felony in violation of R.C. 2907.04(A), and one count of sexual battery, a third-degree felony in violation of R.C. 2907.03(A)(3). On appeal, Appellant contends that 1) the jury returned inconsistent verdicts on allied offenses of similar import, in violation of the double jeopardy clause of the United States and Ohio Constitutions; and 2) there was insufficient evidence to support a conviction

for sexual battery and the jury verdict of guilty on the sexual battery charge was against the manifest weight of the evidence.

{¶2} Because case law is clear that consistency between two jury verdicts in a multi-count indictment is not necessary, and because double jeopardy does not apply to cases with inconsistent verdicts, we find no merit to Appellant's first assignment of error. Thus, it is overruled. Further, because we have concluded Appellant's conviction for sexual battery was supported by sufficient evidence and was not against the manifest weight of the evidence, we find no merit to Appellant's second assignment of error. It is also overruled. Having found no merit to either of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

## FACTS

{¶3} Appellant, Matthew Shaffer, was indicted July 3, 2017 on one count of unlawful sexual conduct with a minor, a third-degree felony in violation of R.C. 2907.04(A), and one count of sexual battery, a third-degree felony in violation of R.C. 2907.03(A)(3). The indictment stemmed from an incident that occurred on June 25, 2017 when Appellant was on vacation in Hocking County, Ohio, with his father, step-mother and fourteen-year-old step-sister. Appellant was twenty-six years old at the time. The incident at issue involved the victim, Appellant's fourteen-year-old step-sister, waking

up to find Appellant next to her with his hand in between her legs reaching underneath her shorts. The victim pretended to be asleep and rolled over in an attempt to get Appellant to stop but Appellant continued and, according to the victim's testimony, he inserted his finger into her vagina.

{¶4} When Appellant returned to his room, the victim quietly woke her mother and step-father, told them what happened, and they quickly exited their cabin through a side door, without even taking time to put on shoes, and drove directly to the sheriff's department to make a report. The victim was then sent to Nationwide Children's Hospital where a physical examination took place and rape kit was performed. The medical examination revealed an abrasion to the posterior fourchette, or the entry to the vagina. According to medical testimony introduced at trial, the injury was consistent with the history provided by the victim.

{¶5} After receiving the initial report, law enforcement went to the cabin where Appellant was sleeping, woke him and brought him to the station for questioning. Although he initially denied any wrongdoing, Appellant eventually admitted that he had touched the victim inappropriately, but he denied that he penetrated the victim. Appellant pleaded not guilty to the charges he was subsequently indicted for, and the matter proceeded to a jury trial.

{¶6} The State introduced several witnesses at trial, including law enforcement officers involved in the investigation and medical personnel involved in the examination of the victim. The victim, her mother and her step-father also testified for the State. The testimony pertinent to this appeal will be set forth and discussed below. However, prior to the conclusion of the trial, the State requested the jury be instructed on attempt as to both of the charged offenses. The jury ultimately acquitted Appellant on the unlawful sexual conduct with a minor charge, but it convicted him of attempted unlawful sexual conduct with a minor and sexual battery. Appellant now appeals his convictions, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.     THE JURY RETURNED INCONSISTENT VERDICTS ON
        ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF
        THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES
        AHD [SIC] OHIO CONSTITUTIONS.

II.     THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A
        CONVICTION FOR SEXUAL BATTERY AND THE JURY
        VERDICT OF GUILTY ON THE SEXUAL BATTERY CHARGE
        WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ASSIGNMENT OF ERROR I

{¶7} In his first assignment of error, Appellant contends that the jury returned inconsistent verdicts on allied offenses of similar import, in

violation of the Double Jeopardy clause of the United States and Ohio Constitutions.  Appellant asserts that because the jury returned inconsistent verdicts, finding him guilty of attempted unlawful sexual conduct with a minor and also guilty of sexual battery, which the trial court found were allied offenses of similar import, the inconsistent jury verdicts were in violation of his constitutional double jeopardy rights.  The State contends that inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict, and that double jeopardy does not apply to cases involving inconsistent verdicts.  For the following reasons, we agree with the State.

{¶8}  As pointed out by the State, we initially note that " '[i]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *.' " *State v. Gapen*, 104 Ohio St.3d 358, 2004–Ohio–6548, 819 N.E.2d 1047, ¶ 138; quoting *State v. Hicks*, 43 Ohio St.3d 72, 78, 538 N.E.2d 1030 (1989); *see also State v. Gilliam*, 4th Dist. Pickaway Nos. 15CA19, 15CA20, 2016-Ohio-2950, ¶ 37.  " 'The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.' " *Id.*; quoting *State v. Adams*, 53 Ohio St.2d

223, 374 N.E.2d 137, paragraph two of the syllabus (1978), vacated on other grounds 439 U.S. 811, 99 S.Ct. 69 (1978). "Thus, a verdict will not be set aside merely because the findings necessary to support the conviction are inconsistent with the findings necessary to acquit the defendant of another charge." *State v. Reine*, 4th Dist. Scioto No. 06CA3102, 2007–Ohio–7221, ¶ 68; citing *Browning v. State*, 120 Ohio St. 62, 71, 165 N.E. 566 (1929). "[T]he sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." *State v. Lovejoy*, 79 Ohio St.3d 440, 444, 683 N.E.2d 1112 (1997).

{¶9} This Court considered an argument challenging inconsistent verdicts in *State v. Stanley*, 4th Dist. Ross No. 1569, 1991 WL 13785. In *Stanley*, we observed as follows:

> "[T]here is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." *Id.* at *2; quoting *United States v. Powell*, 469 U.S. 57, 69, 105 S.Ct. 471 (1984).

We further noted that the United States Supreme Court has also stated, in *Powell*, that:

> " '[R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a

compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper-the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily-and erroneously-argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient.' " *Stanley* at *2; quoting *Powell* at 68.

**{¶10}** Here, Appellant was charged with unlawful sexual conduct with a minor and sexual battery, for engaging in a single act with his step-sister, who was more than ten years younger than him.  R.C. 2907.04 defines unlawful sexual conduct with a minor and provides, in pertinent part, as follows:

"(A)   No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, of the offender is reckless in that regard.

(B)     Whoever violates this section is guilty of unlawful sexual conduct with a minor.
* * *
(3)     Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree."

R.C. 2907.01 defines "sexual conduct" as follows:

" 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

Further, R.C. 2907.03 defines sexual battery and provides, in pertinent part, as follows:

"(A)   No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
* * *
(3)     The offender knows that the other person submits because the other person is unaware that the act is being committed."

{¶11}  Before the trial concluded, the State requested the jury be instructed on attempt with respect to both charges.  As set forth above, the jury acquitted Appellant on the unlawful sexual conduct with a minor charge, but convicted him of attempted unlawful sexual conduct with a minor, as well as sexual battery.  Because the jury only found him guilty of *attempted* sexual conduct with a minor, and because "sexual conduct" is an element of sexual battery, Appellant contends the verdicts were inconsistent.  However, as this Court recently noted in *Gilliam, supra,* "[t]he cases are clear that consistency between two jury verdicts in a multi-count indictment is not necessary." *Gilliam* at ¶ 38.

{¶12}  Appellant further notes that the trial court found the offenses of attempted sexual conduct with a minor and sexual battery were allied offenses of similar import, and argues that because both charges stemmed from a "single act of conduct, with one victim, causing one, distinct harm, they are essentially the same count and, therefore, the inconsistent verdicts require that the case be remanded back to the trial court for a new trial." However, Appellant cites no case law in support of his argument and this Court is unaware of any authority which requires remand for retrial when a jury returns inconsistent verdicts on allied offenses of similar import.  As such, we summarily reject this portion of Appellant's argument.

{¶13}  Finally, Appellant contends that the inconsistency between the verdicts violates his constitutional double jeopardy rights.  However, the United States Supreme Court has held that " 'double jeopardy does not apply to cases involving inconsistent verdicts and, by implication, hung juries.' " *State v. Mitchell*, 5th Dist. Muskingum No. CT2006-0090, 2009-Ohio-5251, ¶ 24-25; quoting *State v. Lovejoy*, *supra*, at 444; quoting *Steckler v. United States* (C.A.2, 1925), 7 F.2d 59, 60.  As further set forth in *Mitchell*:

> " 'In *Dunn v. United States* (1932), 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358-359, the United States Supreme Court found that consistency in a verdict was not required and that where offenses were separately charged in counts of a single indictment, even though the evidence was the same in support of each, an acquittal on one count could not be pleaded

as res judicata as to the other. The court found that the sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency. The court stated: " 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' *Id.*, quoting *Steckler v. United States* (C.A.2, 1925), 7 F.2d 59, 60." *Mitchell* at ¶ 25.

{¶14} Thus, in light of the foregoing, we find no merit to Appellant's arguments that inconsistent verdicts returned by the jury necessitate reversal, remand or retrial, or that they violate Appellant's constitutional double jeopardy rights. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶15} In his second assignment of error, Appellant contends that there was insufficient evidence to support a conviction for sexual battery and the jury verdict of guilty on the sexual battery charge was against the manifest weight of the evidence. "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d

930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶16} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶17} "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary

weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶18} Again, as set forth above, Appellant was convicted of sexual battery in violation of R.C. 2907.03(A)(3), which provides that:

> "(A)   No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
> * * *
> (3)     The offender knows that the other person submits because the other person is unaware that the act is being committed."

As set forth above, Appellant admitted to authorities that he touched the victim inappropriately, but denied that he penetrated her.  However, on appeal, Appellant's argument is limited to the contention "that there was not any evidence presented at trial that the victim was 'unaware' that the sexual conduct was being committed and, therefore, [there was] insufficient evidence to support the verdict of guilty on the sexual battery count." Appellant argues his conviction was against the manifest weight of the evidence for the same reasons.  Thus, Appellant's argument on appeal appears to be limited to the element of the offense regarding the knowledge of the offender regarding the reason for the victim's submission to the

offense, and whether the victim was aware or unaware of what was happening to her.

{¶19} In support of his argument, Appellant cites testimony by the victim introduced at trial which suggests the victim was initially asleep when Appellant's conduct began, but then woke up and pretended to be asleep once she realized what was happening. Appellant argues that the victim's testimony at trial established that "at the time the sexual act took place, [the victim] was aware of what was happening." Appellant essentially contends that the victim's testimony establishes that Appellant's hand was outside her pants, in the process of reaching in, when the victim awoke, and that when the victim was only pretending to be asleep, Appellant's hand moved into her vaginal area. It is this testimony which Appellant bases his argument that "there was not any evidence presented at trial that the victim was 'unaware' that the sexual conduct was being committed."

{¶20} The State represents that it "could find no binding cases that are on point to this issue[,]" but directs this Court to the holding in *State v. Antoline*, 9th Dist. Loraine No. 02CA008100, 2003-Ohio-1130. In *State v. Antoline*, the victim was inappropriately touched by Antoline while she "pretended to be asleep" while lying on the couch. *Id.* at ¶ 45. The victim in that case testified that she pretended to be asleep because she was afraid. *Id.*

She further testified that in an effort to stop what was occurring, she "pretended to turn over[,]" but Antoline continued. *Id.* Antoline started with rubbing the victim's feet and proceeded to pulling aside her shorts and rubbing her vaginal area. *Id.* Antoline then progressed to repositioning the victim's legs after she "pretended to turn over" and placing his lips on her vagina. *Id.* All the while, the victim pretended to be asleep out of fear. *Id.*

{¶21} Antoline's conviction for sexual battery, based upon that fact pattern, was affirmed on appeal. *Id.* at ¶ 56. In affirming Antoline's conviction, the Ninth District Court of Appeals rejected Antoline's argument that "the victim's unawareness is an essential element of R.C. 2907.03(A)(3)." *Id.* at ¶ 51. Instead, the court reasoned that Antoline's argument failed "to give effect to [the] statute's focus on what '*[t]he offender knows*' concerning the victim's submission because of unawareness." *Id.* at ¶ 52. The *Antoline* court further reasoned as follows:

> "We appreciate that, in many prosecutions under R.C. 2907.03(A)(3), the testimony establishes that the victim was either asleep or unconscious, and awakened to discover the offender engaging in sexual conduct with him or her. *See, e.g., State v. Green*, 5th Dist. No. 01CA–A–12–067, 2002–Ohio–3949, ¶ 28–29; *State v. Macht* (June 11, 1999), 1st Dist. No. C–980676, 1999 Ohio App. LEXIS 2656, at *4–5, appeal not allowed (1999), 87 Ohio St .3d 1418; *State v. Collins* (Sept. 22, 1995), 4th Dist. No. 94CA1639, 1995 Ohio App. LEXIS 4409, at *17, appeal not allowed (1996), 74 Ohio St.3d 1510. In such cases, the offender's knowledge that the victim submits because of his or her unawareness is inferred from the victim's

testimony that, initially, he or she was subjectively in a state of unawareness (e.g., sleep or unconsciousness), during which the offender initiated and engaged in sexual conduct. However, the offender's requisite mental state can also be established through other evidence that the offender was aware of the probability that the victim was submitting because of unawareness—including the victim's testimony that he or she pretended to be, rather than actually was, asleep while the sexual conduct was occurring. In such a case, the fact that the offender may ultimately have been wrong about the victim's state of awareness does not preclude prosecution under R.C. 2907.03(A)(3)." *Id.* at ¶ 55.

**{¶22}** Here, the victim testified that she was asleep on the couch in her family's vacation cabin and awoke to realize Appellant was beside her and had his hand in between her legs, on the outside of her clothing, but "reaching into the inside." Like the victim in *Antoline*, the victim herein pretended to be asleep. She also, while still pretending to be asleep, tried to roll over in an effort to get Appellant to stop what he was doing without knowing she was awake. Unfortunately, Appellant continued and according to the victim's testimony he then inserted his finger into her vagina before concluding the encounter.

**{¶23}** An interview between law enforcement and Appellant was played for the jury at trial and reveals the following exchange regarding Appellant's knowledge as to why the victim submitted:

> "Detective DeWeese: I'm just trying to make sure I got it straight in my own mind. Correct me if I make a mistake. What was she wearing?

Mr. Shaffer:  Shorts and a shirt.

Detective DeWeese:  Okay.  So you reached inside the shorts?

Mr. Shaffer:  No, kind of – yeah, it wasn't like this way, it was kind of like in between.

Detective DeWeese:  Underneath the fabric through the leg openings or –

Mr. Shaffer:  A – yeah.

Detective DeWeese:  Okay.  So you reached through the leg opening of the shorts and touched her vagina –

Mr. Shaffer:  Uh.

Detective DeWeese:  And then she rolled over and that was the end of it?

Mr. Shaffer:  Yeah.

Detective DeWeese:  Okay.

Lieutenant Robinson:  Did she wake up that you know of?

Mr. Shaffer:  Not that I know of."

The victim testified as follows as to the events of the night in question:

"I remember I was sleeping on the couch, my head facing the

back of the couch where your back would be and I remembered

feeling his hands start to go up my shorts is when I woke up to

it and I froze.  I couldn't do anything like – and I didn't know

what to do.  I just laid there thinking – thoughts running

through my head and when I finally could put myself together, I

decided to act like I was waking up so he would stop.  So I

started to turn and he did not stop.  He did not remove his hand.

And so I tried to completely turn on my back and then he

finally took his hand out and I just sat there.  I didn't want to

move.  I didn't want him to know that I was awake.  And when

I could finally open up my eyes, he was at the end of the

staircase heading back up."

The victim further testified as follows:

> "Q:    And when you described that this [sic] hand went up
> your shorts, what exactly do you recall happening?
>
> A:     I could feel him trying to find his way underneath my
> shorts and my underwear and reaching up towards the front.
>
> Q:     Okay.  And did you – how – what did you feel during
> this time?
>
> A:     I felt him touching around and then he inserted his finger
> in me.
>
> Q:     And when you say he inserted his finger in you, where
> specifically did he insert it?
>
> A:     In my vagina."

**{¶24}** Although the victim was not specifically questioned about why

she pretended to be asleep, Appellant's father, Brian Shaffer, testified as

follows regarding his memory of night in question:

"Q:    You indicated that you left because your wife and [the victim] were scared that he [Appellant] might do something. That's what you said.

A:    Yes.

Q:    Did he make any threats?

A:    No.

Q:    Was he acting violently?

A:    No.

Q:    Do you know what their fear was based on based on what you heard?

A:    He had a pistol and they were afraid he had it with him, buy they didn't know and they wanted to get out of there as soon as they could."

Further, the victim's mother testified as follows regarding the victim's

demeanor right after the incident, when she woke her mother up to tell her

what had just happened:

"Q:    * * * Once – without going – how would you describe her demeanor?

A:    She was scared.

Q:    Scared.  Okay.

A:    She was shaking.

* * *

Q:    What did you do as a result of what she told you?

> A:     I went in and told Brian and told him that we needed to leave because [the victim] was afraid and [the victim] was afraid and good reason that she was afraid that he might have his gun so we just all left and we went – we just got in the car and left and went to the sheriff's station."

The record further reflects that the victim, her mother and step-father exited the cabin through a side door so as not to wake Appellant, and quickly left without even putting shoes on.

{¶25} Consideration of the foregoing reveals a fact pattern very close, if not identical, to the fact pattern contained in *State v. Antoline*. Although *Antoline* constitutes non-binding authority upon this Court, we nevertheless find it to be very persuasive authority which provides helpful guidance on this particular question. As such, we adopt the reasoning and rationale contained therein, which, applied to this case leads this Court to an affirmance of Appellant's conviction for sexual battery, based upon the specific facts presently before us. Similarly, in *State Anderson*, a victim awoke in the morning to the realization that her pants and underwear were down and Anderson was lying next to her with his penis in her vagina. *State v. Anderson*, 6th Dist. Wood No. WD-04-035, 2005-Ohio-534, ¶ 13. The *Anderson* court noted in its decision that:

> "A jury can reasonably conclude that the defendant knew the victim was substantially impaired and unable to object to the defendant's conduct if there was evidence that the victim was in a state of deep sleep or drunkenness." *Anderson* at ¶ 41; citing

*State v. Branch*, 10th Dist. Franklin No. 00AP-1219, 2001 WL 548630, *2 (May 24, 2001).

The *Anderson* court further noted that "[o]nly appellant knows exactly what occurred prior to the victim waking up that morning and he had a motive to lie about what happened." *Id.* at ¶ 43.

{¶26} Further, in *State v. Henry*, 3rd Dist. Seneca No. 13-08-10, 2009-Ohio-3535, ¶ 5, the court was provided a fact pattern in which a sleeping victim awoke to find a man lying right behind her with his hand underneath her shorts in her pubic area. Thinking it was her boyfriend, the victim removed his hand and said "no." *Id.* This happened a few more times until eventually the man put his hand back into her shorts and penetrated her vagina with his finger. *Id.* She again told him "no." *Id.* When he again put his hand into her shorts, the victim " 'woke completely up' and realized that the man was not her boyfriend[,] and she pushed the man off of her bed and onto the floor." *Id.* Reversing Henry's conviction for gross sexual imposition based upon those facts, the *Henry* court noted that "such a perpetrator may properly be charged with any number of offenses not requiring force, such as sexual battery in violation of R.C. 2907.03(A)(3) * * *." *Id.* at ¶ 33; citing *State v. Lindsay*, 3rd Dist. Logan No. 8-06-24, 2007-Ohio-4490; S*tate v. Antoline*, *supra*; *State v. Wright*, 9th Dist. Medina No. 03CA0057–M, 2004–Ohio–603; *State v. Byrd*, 8th Dist. Cuyahoga No.

82145, 2003–Ohio–3958, ¶ 23 (finding that "perpetrators who engage in sexual conduct with another who is asleep or otherwise unable to appraise or control the nature of his or her conduct are typically prosecuted for sexual battery in violation of R.C. 2907.03(A)(2) or (3)").

**{¶27}** In light of the foregoing, we cannot conclude that Appellant's conviction for sexual battery is against the manifest weight of the evidence. Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. Having already determined that Appellant's sexual battery conviction is not against the manifest weight of the evidence, we necessarily reject Appellant's additional claim that this conviction is not supported by sufficient evidence. Thus, we reject both the manifest weight and sufficiency portions of Appellant's argument and overruled Appellant second assignment of error.

**{¶28}** Based on the foregoing, and having found no merit to the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
       Matthew W. McFarland

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**